■ BRONX-LEBANON HOSPITAL CENTER, Respondent, v SIGNATURE MEDICAL MANAGEMENT GROUP, L.L.C., Appellant. [775 NYS2d 279]—

Order, Supreme Court, Bronx County (Dianne T. Renwick, J.), entered August 8, 2002, which denied defendant's motion to disqualify an arbitrator in a pending arbitration proceeding on grounds of bias or appearance of bias, unanimously affirmed, without costs.

While "in an appropriate case, the courts have inherent power to disqualify an arbitrator before an award has been rendered" (*see Matter of Astoria Med. Group [Health Ins. Plan of Greater N.Y.]*, 11 NY2d 128, 132 [1962] [citations omitted]), that extraordinary relief should only be employed where "there exists a real probability that injustice will result" (*Matter of Lipschutz [Gutwirth]*, 304 NY 58, 64 [1952]). An application to disqualify an arbitrator during the course of the arbitration must be based on misconduct on the part of the arbitrator (*Astoria Med.*, 11 NY2d at 137). And, while the appearance of bias may suffice (*see Rabinowitz v Olewski*, 100 AD2d 539, 540 [1984]), that bias must be clearly apparent based upon established facts, not merely supported by unproved and disputed assertions.

Here, the crux of the conduct of which Signature complains is that the arbitrator rejected its assertion that her authority to arbitrate did not include modifying the escrow fund created by the so-ordered stipulation entered into by the parties in the context of pre-arbitration litigation. However, this disqualification application is not based upon the argument that the arbitrator exceeded her authority; it is based upon a claim of bias. So, as Signature recognizes, it may not rely upon the ruling itself to seek disqualification; rather, what Signature points to is the conduct surrounding that ruling.

To the extent Signature sees bias in the arbitrator's arrogat-

ing to herself jurisdiction to decide an issue that was specifically reserved to the court, and ignoring Signature's challenge to her jurisdiction on this point, we simply note that these aspects of the arbitrator's conduct are part and parcel of her decision to rule in favor of Bronx-Lebanon Hospital Center (BLHC) on the merits of the application, and cannot be relied upon to establish bias. Similarly, that the arbitrator relied upon the terms of the escrow agreement to support her ruling, although that document was only between BLHC and its own attorneys and did not bind Signature, is merely an argument that the arbitrator made an error, and does not establish bias.

Signature also protests that the arbitrator prejudged the issue, based upon the assertion that in their January 18, 2002 teleconference concerning the escrow account, she "warned" Signature's counsel that she would support the position taken by the hospital. However, BLHC asserts that in the course of this conversation, the arbitrator, at most, merely preliminarily expressed how she would likely rule on the issue, given her understanding of the facts prior to written submissions. Indeed, it is notable that Signature's February 11, 2002 written submission opposing the application made neither protest nor mention of what it now calls a "warning," although one would expect an attorney to remark upon any such "warning" at the first opportunity. Yet, the first time Signature's counsel suggested that the arbitrator had issued any such "warning" was in its March 21, 2002 letter application asking the arbitrator to recuse herself. We conclude that this disputed characterization of an oral statement by the arbitrator does not amount to a showing of bias, or even the appearance of bias.

Finally, Signature complains that the arbitrator subverted its petition for an order staying the arbitrator from ruling on the escrow matter, by gratuitously sending the court a letter dated February 25, 2002, in which the arbitrator misrepresented Signature's position. In her letter, the arbitrator said that counsel for both sides had represented to her that "the outstanding disputes, including the disposition of the escrow monies, would be resolved through the arbitration by order of Justice Targum," and second, that "counsel for Signature Medical Management Group LLC expressed no objection to my ruling on the disposition of the escrow monies at the telephone conference calls of either January 18, 2002 or February 13, 2002; the first objection to the arbitrator's authority was contained in the papers submitted in support of the Order to Show Cause."

The question before us is not whether it was proper for the

arbitrator to intrude in the motion before the court. The question is whether her action in sending the letter demonstrates bias, or creates the appearance of bias. Review of the record convinces us that it does not. Rather, the contents of her letter to the court reflect the arbitrator's desire to justify her actions; it further reflects that she either failed to fully comprehend Signature's position regarding her authority to decide, on the merits, BLHC's application to release the escrow account, or her disagreement with its position as to her authority.

We also note that the arbitrator's misrepresentation of Signature's position before her had no effect on the court hearing the stay application; it merely issued an order referring the movant back to the court that had so-ordered the stipulation which provided for the creation of the escrow fund, and granted a temporary stay to give Signature time to do so.

For all the foregoing reasons, we conclude that the application to disqualify the arbitrator was properly denied. Concur—Tom, J.P., Saxe, Williams and Gonzalez, JJ.